[Sunbury, July 3, 1829.]

## BARNHART *against* PAINTER and another.

### IN ERROR.

A plaintiff, in possession of the defendant's property, under a *Liberari Facias*, which has been set aside, and restitution awarded, though not actually made, cannot give an authority to another person, to collect from his tenant the balance of the rent due upon the lease.

If the person under such alleged authority, distrain upon the tenant, and, upon replevin brought, avow for rent in arrear, under the lease, he cannot justify the distress, by proving a parol lease, by himself to the tenant.

Nor can he justify the distress, by asserting the character of administrator of the defendant in the *Liberari Facias*.

The proviso in the arbitration act, relative to appeals by executors and administrators, does not apply to cases in which they are sued for their own acts, even if they be done for the benefit of the estate; but to those alone in which they sue, or are sued, in their representative capacity.

Error to the Court of Common Pleas of *Northumberland* county.

*George Barnhart* brought an action of replevin, against *John Painter*, and *John C. Caul*, and on the trial, the case appeared to be as follows: On the 23d of *July*, 1819, *Alexander Graham* obtained a judgment against *Lott Corson*, on which a *Fieri Facias* was issued, returnable to *January* Term, 1820, which was levied on a tavern, and lot of ground, which were found sufficient to pay the debt and costs in seven years. A *Liberari Facias* was issued to *November* Term, 1824, and *Alexander Graham* was put into possession. In *January*, 1825, he leased the premises to *George Barnhart*, for one year, from the 1st of *April*, 1825, at the yearly rent of fifty dollars, payable quarterly.

On the 30th of *April*, 1825, the *Liberari Facias* was set aside by the court, and restitution awarded, but not actually made. *Graham* had received twenty-five dollars, two quarters' rent; and afterwards, by an endorsement on the lease, authorized *John Painter* to collect, and receive the balance. *Painter* distrained upon *Barnhart's* property, for two quarters' rent. It appeared, that

(Barnhart *v.* Painter and another.)

*Mary Barnhart*, by her next friend, *George Barnhart*, had brought a suit against *Lott Corson*, to *January* Term, 1824, and had obtained judgment against him; and, on the 12th of *January*, 1826, *George Barnhart* was put into possession, on a *Liberari Facias* issued on that judgment. *Lott Corson* had died on the 2d of *October*, 1824. *Mary Barnhart's* execution was never set aside.

The replevin was brought to *August* Term, 1826. On the 2d of *June*, 1826, the defendants entered a rule of reference; and the arbitrators, on the 29th of *July*, returned an award in favour of the plaintiff for seven dollars damages, with costs. On the 17th of *August*, a paper was filed, signed by the defendants' attorney, stating, that the distress and rent were for the use of *John Painter*, administrator of *Lott Corson*, and that *Painter* would appeal, without paying costs, and, on the same day he made affidavit, and appealed. On the 22d day of *August* a rule was granted, to show cause why the appeal should not be dismissed, which was afterwards made absolute; but, on the 17th of *April*, 1827, the rule was rescinded; and, on the same day, *Painter* avowed, and *Caul* made cognizance for rent in arrear on *Graham's* lease, assigned, as they averred, by *Graham* to *Painter*, and claimed rent from the 1st of *October*, 1825, to the 1st of *October*, 1826. On the avowry was *endorsed* as follows:—*John Painter* suggests, that the rent is, and was claimed for the use of the creditors of *Lott Corson*, deceased, of whom he is administrator *de bonis non*, &c. The plaintiff replied, no rent in arrear, *non demisit*, &c.

On the 1st of *December*, 1827, a verdict was found for the defendants, with twenty-five cents damages, and the amount of the rent was found to be twenty-five dollars, and judgment was rendered accordingly.

The charge of the court having been excepted to by the plaintiff's counsel, a writ of error was taken out, on the return of which, the following errors were specially assigned:—

"1. The Court erred in reinstating the appeal from the report of arbitrators, after the same had been stricken off.

"2. The Court erred in telling the jury, that the only question which remains is, ' whether *John Painter*, as administrator of *Lott Corson*, could recover this rent for the payment of the debts of *Corson*. If the jury believed there was not personal estate sufficient for the payment of *Corson's* debts, lands and tenements, as well as goods and chattels, are considered assets for the payment of debts. In that case, the administrator would have a right to collect the rents due the deceased, and appropriate them to the payment of the debts. The general principle is, that administrators cannot meddle with the proceeds of real estate, but the case is altered when there is not sufficient real and personal estate for the payment of the debts. How it was in this case, the jury can determine from the evidence.' "

*Greenough*, for the plaintiff in error, insisted, that the appeal,

(Barnhart *v.* Painter and another.)

which was at first properly struck off, ought not to have been reinstated. But, without resting upon the error of thus replacing it, as it was argued in the court below, that the first decision had been given without hearing the opposite party, he contended, that the appeal should never have been admitted. The distress was made by *Painter* in the character of assignee of the lessor, and the rule of arbitration is taken out by him in that capacity. When the proceedings return to the court, he drops the character of assignee, and assumes that of administrator; contending, that as such, he may appeal, without paying costs. The allowance of the appeal was erroneous.

The charge of the court was erroneous in the instances pointed out in the assignment of errors. Whether an estate is indebted or not, the administrator is not entitled to receive the rents accruing after the death of the intestate. This principle is too clear to require the support of authorities.

*Bellas, contra,* answered, that it appeared from the evidence, that after the death of *Corson, Barnhart,* when called on by *Painter,* agreed to pay to him the rent, and this must be considered as a new demise. The general principle will not apply if a new lease is thus created; and the administrator, when he receives the rent upon it, will be bound to account to the creditors, and, therefore, may justify the distress by virtue of it. If the pleadings were disregarded on the trial, and evidence given of a parol lease, we ought not now to go back to the pleadings, and try the cause on them. If objections had been made on the trial, we would have amended the pleadings.

But *Greenough,* as to the agreement, asserted to have been made by *Barnhart,* referred to the evidence to show, that *Barnhart* was, at that time, ignorant that the *Liberari Facias* had been set aside, and as soon as he was acquainted with the true state of the facts, he refused to pay either *Graham* or *Painter.*

SMITH, J., (after stating the principal facts, the pleadings, and the charge of the court below,) delivered the opinion of the court as follows:—The instruction given to the jury was erroneous. On the issue of no rent in arrear, the question to be tried was, whether *Alexander Graham* had a right to demand rent? To me it appears very evident, he had no such right. His claim was founded solely upon his writ of *Liberari Facias* to *November* Term, 1824. If this execution had not been issued, *Alexander Graham* would not have had possession; and when, therefore, it was set aside, and restitution awarded, he not only lost all claim to the rent, subsequently accruing, but could have been compelled to restore to *Lott Carson,* if he had been living, or to his heirs, if he were dead, the rent he had received. His right was then, founded on the execution, and, therefore, when that was gone, his claim to rent was gone also. This, too, seems to have been taken for granted, by the judge who tried the cause, for, in his charge, he says, " Under that lease *John*

(Barnhart *v.* Painter and another.)

*Painter* was not entitled to receive rent." But this was the very question then trying, for it was under this lease, that *Painter* set up his claim to the rent; it is set out by him in his avowry at large, and it is on this lease, the plaintiff replied, there was no rent in arrear. I am then decidedly of opinion, no rent was due to *Alexander Graham*, when he authorized *John Painter*, by the endorsement on the lease, "to receive and collect the balance of the said lease;" and, therefore, *Painter* could have no right to demand any under the said lease.

It is, however, alleged by the defendants' counsel, that although no rent was due under this lease to *Alexander Graham*, yet, there was a parol lease from *John Painter* to *George Barnhart*, and that by virtue of this, he had a right to distrain. There is something plausible in this. But it is unfortunate for the defendants, that *John Painter* should set out in his avowry, and in his warrant, a lease so entirely different from the one under which he claimed rent. If such a lease really existed, of which, I confess, I am at a loss to discover the evidence, it cannot help the defendants. The issue was taken upon *Graham's* lease; which was a written lease, not a parol one. But if the defendants had even proved, that another lease between other parties did exist, and that the rent was due upon that other lease, and not on the lease mentioned in the avowry, the plaintiff's case would have been made out, and the defendants acknowledged to be trespassers. They can be justified only by the lease set out by themselves, or not at all.

It is further urged on the part of the defendants, that *John Painter* being the administrator of *Lott Corson*, deceased, was clearly entitled to the rent, and as administrator could distrain. This ground, I deem equally untenable. *John Painter* does not claim by virtue of a lease from *Lott Corson*, nor upon his own lease. It must be recollected, that when *Graham's* execution was set aside, and thereupon restitution awarded, if *Corson* had been living, he could have claimed restitution, and he being dead, *his heirs*, not his administrator, have the same right. It is unnecessary, in this case, to determine, whether an administrator can enter upon real estate, and take the profits; it is certain, he cannot bring an ejectment for the real estate of the intestate, nor enter upon and disturb the *heir*, without an order of sale from the Orphans' Court. See also *Drinkwater* v. *Drinkwater, Administrator of Prince*, 4 *Mass. Rep.* 356, where this matter is fully elucidated. Once for all, *Painter* had not entered upon the property and given a lease; nor does he justify, under a lease from *Lott Corson*, or himself. And I, therefore, think, the charge of the court was erroneous, in leaving it to the jury to find for the defendants, on a supposed right in *John Painter*, as administrator of *Lott Corson*, deceased, to distrain for the rent in question.

Another error is assigned on this record. It is this, that "the court erred in reinstating the appeal from the report of arbitrators,

(Barnhart v. Painter and another.).

after the same had been stricken off;" in other words, that the whole proceedings, since the award of arbitrators, are illegal.   I have already stated, that this was an action of replevin, in which the plaintiff complained of the illegal acts of the defendants.   He does not claim any thing from *Lott Corson*, or his estate; but, demands damages from *John Painter* and *John C. Caul*, for unjustly taking and detaining his property.   Clearly, trover or trespass would lie. It is evident, the personal acts of the defendants, constitute the grounds of this action; and in case of recovery, damages are recovered for the detention.   The proviso in the arbitration act, allowing executors or administrators to appeal, as theretofore, cannot, and in my opinion, does not apply to cases in which executors or administrators are sued for their own acts; but merely applies where they sue, or are sued in their representative capacity.   To construe it otherwise, would be a perversion of the act, or the provision in it. In this action, there was an award of arbitrators for the plaintiff, on the 29th of *July*, 1826, against the defendants.   The defendant, *Caul*, does not appeal.   *John Painter* alleges, that he is administrator of *Lott Corson*, deceased, and, therefore, he can appeal without payment of costs, in an action, in which the estate of *Lott Corson* is not sued, and in which damages are demanded of him for his own personal wrong or misfeasance.   To illustrate this, let me suppose *Painter* had entered a man's stable, and taken his horse, and an action of trespass or replevin, brought against him;—can he, by alleging, that he committed the trespass with a view to benefit some estate, of which he was administrator, claim privileges, which are not allowed to those who commit a trespass for their own benefit? Suppose an action of trespass had been brought against *Caul alone*, could he claim an exemption from costs, because the administrator of *Corson* had employed him, and intended to defend him?   It cannot be.   The appeal then, by *Painter*, without payment of costs, was illegal.   The plaintiff objected immediately, and if the court had rejected his motion, he could have taken advantage of it in this court.   It is, therefore, clear on this ground, that the reinstating the appeal, (not indeed at the next term, but at the third term, after it had been stricken off,) and all subsequent proceedings were illegal, and must be reversed.   It is not necessary to raise the question, whether the court here have a right to reinstate an appeal, after it is struck off; or, whether it must be reinstated by the court of error. The plaintiff's ground is, that the appeal was illegal, and was rightly struck off, and the error was, in the court below reinstating it. Besides, the defendant did not avow as administrator of *Lott Corson*, but as assignee of *Alexander Graham*.   He could, therefore, not appeal, as *Lott Corson's* administrator, nor without payment of costs.   The judgment is, therefore, to be reversed.

Judgment reversed.