BROD v. GUESS et al. (No. 6081.)

(Court of Civil Appeals of Texas. April 16, 1919.)

1. CHATTEL MORTGAGES  ⬦17 — TITLE OF MORTGAGOR.

One cannot convey by chattel mortgage a greater title than he possesses.

2. LANDLORD AND TENANT ⬦330(1)—RENTING ON SHARES—RIGHTS OF LANDLORD—INTEREST IN GROWING CROPS.

The owner of land cannot create a valid mortgage on an unplanted or growing crop, which belongs to the tenant, who has merely agreed to pay him a share of the crops as rents for the use of the land, and where, prior to a division of the crops, the land is sold under a trust deed, the chattel mortgagee has no lien on any part of the crop.

Appeal from Bell County Court; M. B. Blair, Judge.

Suit by O. J. Brod against C. P. Guess and another. From an adverse judgment, the plaintiff appeals. Affirmed.

A. W. Gibson, of Temple, for appellant. F. W. Burford and M. E. Monteith, both of Belton, for appellees.

BRADY, J. Appellant brought suit against appellees, C. P. Guess and C. B. Starke, alleging that on March 16, 1917, Guess executed his note to W. P. Baugh, or order, for $890, with interest and attorney's fees, and payable October 16, 1917; that before maturity Baugh transferred and assigned the note to appellant, without recourse; that contemporaneously with the execution of the note Guess executed and delivered to Baugh a chattel mortgage to secure same, upon the rents to become due from the crops for the year 1917 on certain lands rented to Allison Bros., which mortgage was forthwith recorded in Bell county, where the land was situated; and that the mortgage was also assigned to appellant along with the note.

Appellant further alleged that on the ——— day of January, 1917, Guess rented the land to Allison Bros. for the year 1917, and that such tenants were to pay as rent for the land one-fourth of all the cotton and cotton seed and one-third of all grain grown thereon in said year; that a crop of corn, cotton, and hay was by said tenants grown on the land during the year 1917, and thereby became subject to the mortgage; and that the value of the rent cotton was the sum of $450, and the value of the rent hay was $26.66. Appellant also alleged that appellee, C. B. Starke, without his knowledge and consent, at various times between August 1st and December 1, 1917, converted and appropriated to his own benefit all of the rents and proceeds of the above-described agricultural products.

Appellee Guess filed no answer, but made default, and appellee Starke filed general demurrer and general denial only.

The case was tried by the court without a jury, and judgment rendered in favor of appellant against appellee Guess for the amount of the note, interest, attorney's fees, and costs, and for foreclosure of the chattel mort-

gage, from which judgment Guess has not appealed. The court sustained the demurrer of appellee Starke to appellant's evidence, and adjudged that appellant take nothing against him.

The case was tried upon an agreed statement of facts, which, omitting the details of the documentary evidence, was substantially as follows: That on or about September 10, 1915, T. N. Hartrick acquired equitable title to the land, the rents from which are in controversy in this suit; that during the fall of 1916 Hartrick rented the land to Allison Bros. for agricultural purposes for the year 1917, and they agreed to pay Hartrick rents for said year. That on or about February 9, 1917, C. P. Guess acquired equitable title to the land, and thereafter Guess and Allison Bros. renewed and ratified the rental contract theretofore existing between the latter and Hartrick. That at the time Hartrick acquired equitable title to the land from Starke, he, as part consideration for the purchase thereof, executed vendor's lien notes secured by a deed of trust on the land, which instrument was filed for record February 13, 1917. The deed of trust did not undertake to convey the rents or growing crops, but did contain the clause: "Together with all and singular the rights, members, hereditaments and appurtenances to the same belonging or in any wise incident or appertaining." That on March 16, 1917, Guess executed the note sued on, and the payee, W. P. Baugh, assigned the same to appellant, Brod, the present owner and holder, without any notice of Starke's lien on the land, except the record of the deed of trust. That contemporaneously with the execution of the note Guess executed a chattel mortgage securing the same, with lien on the rents to accrue on the farm for the year 1917, which was filed for registration on the following day. That on April 6, 1917, the trustee named in the deed of trust, at the request of appellee Starke, published notice of sale of the land because of default in the payment of past due principal and interest, and on May 1, 1917, Starke became the purchaser at the trustee's sale. The trustee's deed to Starke did not undertake to specifically convey the growing crops, but contained the identical clause above quoted from the deed of trust. The trustee's deed was recorded May 3, 1917. That the rents from the crops grown on the land by the Allisons during the year 1917 aggregated the sum of $438.30, which rents were paid to Starke, at his instance and request, in cash by the Allisons, and that Starke had at the date of the trial the proceeds of such rents, and refused to pay the same over to appellant. That C. P. Guess was insolvent. That, by the terms of the rent contract between Hartrick and Allison Bros., the latter were required to gather and sell the crops, and to deposit the portion of the cash proceeds representing the rent in bank to the credit of Hartrick, and that a similar arrangement was made when the contract was renewed by the Allisons with appellee Guess.

The trial court filed conclusions of fact, which substantially followed the agreed statement of facts, and the court also made the following conclusions of law:

"(1) That any lien which plaintiff, as mortgagee, may have had against the crops grown on said premises did not extend to the proceeds arising from the sale thereof, and defendant Starke was not guilty of conversion when receiving part of such proceeds.

"(2) That, the deed of trust under which defendant Starke acquired title to the premises being of record prior to the execution of the mortgage under which plaintiff claims a lien for rents accruing thereon, he, the plaintiff, his assignor and mortgagor were charged with due notice thereof, and are not entitled to any rents which became due or accrued after the foreclosure of and sale under that deed of trust."

The questions presented by the assignments of error in appellant's brief are substantially to this effect: Did the title to or property in the rents accruing upon the land belong to appellee Guess or to Starke, the purchaser at trustee's sale, at the time the same accrued, and was Starke guilty of conversion by receiving and appropriating to his own use and benefit the share of the crops representing such rent?

The decision of these questions necessitates an inquiry into the true relation of the parties, and at least a brief review of the authorities, and a determination of the legal and equitable principles upon which the questions must turn.

[1, 2] The undisputed evidence in this case shows that the relation of landlord and tenant existed between Hartrick and Allison Bros., and in turn between the latter and Guess. This was the relation which existed at the time the chattel mortgage was executed—the rents payable to the landlord upon the maturity of the crops, and to be converted into cash and deposited to the credit of the landlord. The rights of the mortgagee under the chattel mortgage, and of appellant, his assignee and transferee, were dependent upon the rights of Guess, who was the owner of the land, and the landlord at the time the rental contract was renewed and the chattel mortgage executed. If the title to the rents, or the portion of the crops to be grown and harvested representing the rents, was in Guess at the time of the execution of the chattel mortgage, or if prior to the purchase by appellee Starke, and the vesting of title to the land in him, Guess had acquired the title to the rents, or such portion of the crops, the judgment of the trial court would have been erroneous, and this would require a reversal of this case. However, under the facts in the record, we are of the opinion that the title to the rents or any portion of

the growing crops was not in Guess at the date of the chattel mortgage, and never vested in him or in appellant Brod. By virtue of the rental contract, the title to the entire crop to be grown and afterwards maturing was vested in the tenants, Allison Bros., and the relation between them and Guess was that of landlord and tenant; Guess standing in the relation also of a creditor of Allison Bros., with a landlord's lien to secure the rent to accrue for the use of the land. Guess had but an inchoate and immature claim and lien, which never ripened into a complete right or title because. of the intervening trustee's sale and vesting of title in appellee Starke prior to the time that the crops matured and were ready for division.. Guess, by the chattel mortgage to Baugh, could convey no greater title nor right than he himself had in the crops, and, of course, appellant acquired no greater title or right therein.

In the case of Williams v. King, reported in 206 S. W. 106, this court had before it the identical questions, the only substantial difference being that there the tenant paid the rents over to the mortgagees under certain chattel mortgages, whereas in the present case the rents or the proceeds of the crops were paid over by the tenant to the purchaser at trustee's sale. This consideration, however, does not affect the decision of the case, and the two cases must be considered as being in all substantial respects alike.

Upon motion for rehearing, this court decided in the Williams Case that the chattel mortgages did not sever the growing crops from the realty, in so far as the landlord and owner were concerned, and that the latter had no title in the crops which he could mortgage. In the course of the opinion it was stated that—

"One cannot mortgage that which he does not own, so as to create a lien thereon prior to his becoming such owner. A landlord is not the owner of any part of a growing crop being raised by his tenant before it is divided, or, if there is an agreement to divide, before it is matured and ready to be divided"—citing Railway Co. v. Doke, 152 S. W. 1174; Curlee v. Rogan, 136 S. W. 1127; 6 Cyc. 1048; 11 Corpus Juris, 431.

The court recognized that a different rule would apply in the case of a "cropper on the shares," and also where a mere partnership relation existed in the cultivation of the land; thus distinguishing some of the cases relied upon by appellant in this case. This court further held that—

"A tenant may mortgage an unplanted crop, and the same will be effective as soon as he plants the crop, for the reason that he then becomes the owner thereof. A landlord has a lien on such crop for rents and advances, but, until the crop is matured and partitioned, he has no ownership therein. * * * But a mortgage of a growing crop by one who has no ownership therein will not sever it from the realty."

Under the doctrine stated in Williams v. King, and the authorities cited therein, we overrule the contentions of appellant, and hold that the trial court properly rendered judgment for appellee Starke.

Appellant cites several cases, some expressions in which apparently support his propositions, but when the facts are analyzed they do not do so. The leading case of Willis v. Moore, 59 Tex. 628, 46 Am. Rep. 284, is relied upon, but it will be found in that case the relation between the owner of the land and the party cultivating the same was that of partners, and it was expressly stated by the Supreme Court that the case would be decided upon that assumption, and not upon the relation of landlord and tenant. In other cases cited by appellant, either the relation of landlord and tenant did not exist, or the controversy was over the crops belonging to the tenant. In the latter case the rule is well established, as stated in Williams v. King, that when the tenant plants his crop he has such title and ownership therein as will make a mortgage on the unplanted crop effective, for the reason that he becomes the owner thereof when he plants the crop. We think the difference in the facts of such cases and the present case is manifest.

We have been cited to no case the facts of which, in our opinion, support the proposition that the owner of land may create a valid mortgage upon an unplanted or growing crop, which he does not own, but which belongs to the tenant, who has merely agreed to pay him a share of the crops as rents for the use of the land. The rule is just to the contrary. This is upon the principle that he cannot mortgage something he does not own, and if prior to his acquisition of title to his contractual share of the crops he has been divested of title in the land and of the right of possession, the right to the unmatured and undivided rents vests in the purchaser.

For the reasons indicated, and upon the authority of Williams v. King, supra, and authorities there cited, the judgment will be affirmed.

Affirmed.